IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2025 Session

## DAVID MARTIN, TRUSTEE OF THE JOINT REVOCABLE TRUST OF CLAUDE S. JERNIGAN AND JO ANN JERNIGAN v. TREVOR D. HILL

**Appeal from the Chancery Court for Hamilton County**
**No. 12-0139  Pamela A Fleenor, Chancellor**

_____

**No. E2023-00091-COA-R3-CV**

_____

A grandmother made a series of loans to her grandson totaling $147,000 to help with his restaurant business. After personal attempts to collect on the loan failed, the grandmother filed a complaint for breach of contract and unjust enrichment. A default judgment against the grandson was granted in 2012, and the grandmother made several unsuccessful attempts to collect on the judgment. After the grandmother's death, her trustee motioned for substitution as the judgment creditor and for an extension of the judgment, which was granted, and the trustee then began collection efforts, none of which were successful. Only after the trustee filed a charging order against the grandson and his businesses did the grandson respond to the suit, more than ten years after the original default judgment had been granted. The grandson filed a Rule 60.02 motion to set aside the substitution and extension order, and when that was denied, he appealed to this court. While on appeal, the grandson motioned this court for a remand to the trial court to file a Rule 60.02 motion to set aside the default judgment, which we granted. The trial court denied the motion to set aside the default judgment, and the grandson appealed that decision to this court. Finding that the motion for substitution and extension was timely filed, we affirm the trial court's denial of the grandson's motion to set aside order of substitution and extension. We also affirm the trial court's determination that the default judgment is valid and binding and affirm the trial court's denial of the motion to set aside default judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON II, J., joined.

John P. Konvalinka, Lawson Konvalinka, Barry L. Abbott, Caleb J. Smith, and James Michael Holloway, Chattanooga, Tennessee, for the appellants, Trevor Hill, The Hill, LLC, Forrest Hill, Knoxville, LLC, and Gale Hill.

Elizabeth M. Hill, Chattanooga, Tennessee, for the appellee, David Martin, Trustee of the Joint Revocable Trust of Claude S. Jernigan & Jo Ann Jernigan.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Jo Ann Jernigan ("Ms. Jernigan") made a series of loans totaling $147,000 to her grandson Trevor Hill ("Mr. Hill") to help fund his restaurant business. Mr. Hill made one $3,000 payment to Ms. Jernigan in November 2011 but made no further payments. In February 2012, after personal attempts to collect on the loan had failed, Ms. Jernigan filed a complaint for breach of contract and unjust enrichment. Mr. Hill was personally served on March 2, 2012, but he did not answer the complaint or otherwise respond to the suit.

On April 5, 2012, Ms. Jernigan filed a motion for default judgment and served it, along with a notice of hearing, on Mr. Hill by mail the same day. Mr. Hill did not file a response to the motion and did not attend the hearing. The motion was heard on April 16, 2012, and the trial court entered the order for default judgment on April 18, setting the matter for a final hearing for damages on April 30, 2012. Mr. Hill was served and signed the certified receipt for the order and notice of hearing; however, Mr. Hill did not attend the hearing. In its May 1, 2012 order, the trial court entered a judgment in favor of Ms. Jernigan against Mr. Hill in the amount of $144,072.00, plus post-judgment interest at 10% per year.

In the following months, Ms. Jernigan filed the judgments with the Registers of Deeds in Hamilton and Knox counties and issued garnishments to two of Mr. Hill's banks; however, no funds were recovered.

Thereafter, Ms. Jernigan amended the trust that she and her late husband had established by naming David Martin as the trustee and expressly disinheriting Mr. Hill as a beneficiary of the trust.

Ms. Jernigan died in March 2019. Following the opening of her probate estate, Mr. Martin was issued Letters Testamentary to serve as the executor of Ms. Jernigan's probate estate. Before closing her estate, David Martin, in his capacity as the executor, assigned the judgment from the estate to the trust. Then David Martin, in his capacity as trustee ("Trustee"), filed a motion in the civil action against Mr. Hill to substitute himself in his capacity as Trustee as the judgment creditor. He also motioned to extend the judgment for an additional ten-year period. The motion was served on Mr. Hill by mail on January 21, 2022, the day of filing. Once again, Mr. Hill did not respond. Following a hearing, the court granted the motion in its March 2, 2022 order.

Trustee then filed a motion for a charging order and accounting of Mr. Hill's interests in The Hill, LLC, and Forest Hill, Knoxville, LLC. Mr. Hill was served by mail on March 16, 2022, and did not respond to the motion or appear at the subsequent hearing.

As such, the court issued the charging order on June 24, 2022. Trustee then made unsuccessful attempts to serve non-wage garnishments on The Hill and Forest Hill. By that time, the judgment and interest totaled $290,181.83.

In July 2022, more than ten years after this action was commenced, Mr. Hill made his first appearance by filing a Tennessee Rule of Civil Procedure 60.02 motion to set aside the charging order. He stated that his delay in responding was "the product of inadvertence and/or excusable neglect." Soon after, Gale Hill ("Ms. Hill"), Mr. Hill's mother and a named beneficiary of the trust, filed a motion to stay and quash garnishment. The motion alleged mismanagement of the estate and trust by Mr. Martin and that the garnishments were in retribution for Ms. Hill seeking an accounting from Trustee. Mr. Hill, The Hill, and Forest Hill later joined in the motion to stay and quash garnishment.

Mr. Hill, The Hill, and Forest Hill then moved to set aside the March 2, 2022 order of substitution and extension, claiming in part that the order "is a nullity" because "the case was improperly reopened by a party that lacked legal existence at the time of reopening." Relying on *Owen v. Grinspun*, 661 S.W.3d 70, 87 (Tenn. Ct. App. 2022), Mr. Hill argued, "The Tennessee Court of Appeals recently held that an action filed by a deceased plaintiff 'does not relate back to the [original] commencement of the suit' and 'could not be cured or waived,' which resulted in the case being dismissed." Mr. Hill also argued that the motion for substitution and extension was not timely filed. As a result, Hill contended, no extension of time had been granted, and the judgment expired under the ten-year statute of limitations.

After a hearing, the trial court denied Mr. Hill's motion to set aside the order of substitution and extension, finding his argument unpersuasive. The trial court distinguished *Owen* from the present case because the plaintiff in *Owen* had died before suit commenced, unlike Ms. Jernigan, who not only initiated the suit but also obtained a judgment before her death. The court further explained, "The death of a judgment creditor does not extinguish the debt. Here a valid action was commenced and a valid judgment was entered. . . ." The court found that Trustee "appropriately moved the Court to substitute [Trustee] as the judgment creditor."

Mr. Hill appealed that ruling to this court, and the trial court subsequently granted his motion to stay execution of the judgment, pending the results of the appeal, conditioned upon a $300,000 cash bond.

On appeal, Mr. Hill motioned this court to remand the case to the trial court to allow him to file a Tennessee Rule of Civil Procedure 60.02 motion to set aside the April 18, 2012 default judgment. This court granted that motion, and Mr. Hill filed in the trial court his Rule 60.02 motion to set aside the default judgment, claiming that that he was not given sufficient notice of hearing. The motion explained:

By application of the rules, the hearing on the motion for default judgment failed to comply with notice provision of Tenn. R. Civ. P. 55; When the day of mailing is excluded, weekend days are excluded, legal holidays are excluded, and 3 days added for service by mail. Hill was entitled to 8 days' notice, and he only received 6.

As such, Mr. Hill contended, the judgment was void, not voidable. Further, he argued that his motion was timely because motions under Rule 60.02(3), where the judgment is void, may be made at any time.

In its August 22, 2024 order, the trial court denied that motion, concluding

that the judgment is not void but rather is valid and binding on [Mr. Hill]. Moreover, even if the default judgment were void, exceptional circumstances preclude [Mr. Hill] from seeking relief from it. [Mr. Hill]'s default was willful, he lacks a meritorious defense, and Plaintiff would be unduly prejudiced if the default were set aside.

Mr. Hill then filed another notice of appeal, this time from the order denying his motion to set aside the default judgment.[1]

## ISSUES

Mr. Hill raises two issues on appeal: 1) whether the trial court erred in denying his Rule 60 motion to set aside default judgment, and 2) whether the trial court erred in finding that Trustee had timely filed a motion for substitution.

For his issue, Trustee contends that the trust is entitled to recover its attorney's fees should this court reverse and set aside the default judgment.

## STANDARD OF REVIEW

In reviewing a trial court's decision on a Rule 60.02 motion, a motion for relief from a final judgment, this court generally applies an abuse of discretion standard. *Turner v. Turner*, 473 S.W.3d 257, 268 (Tenn. 2015). However, our Supreme Court in *Turner* established a different standard of review specifically for a Rule 60.02(3) decision in which the trial court determines whether a judgment is void. Because decisions regarding the exercise of personal jurisdiction over a defendant, the interpretation of the Tennessee Rules of Civil Procedure, and whether or not a judgment is valid are all questions of law, we "apply de novo review, with no presumption of correctness, when reviewing a trial court's

---

[1] Ms. Hill, Forest Hill, and The Hill join in the appellate brief of Mr. Hill.

ruling on a Tennessee Rule 60.02(3) motion to set aside a judgment as void." *Turner v. Turner*, 473 S.W.3d at 268–69.

Whether a motion is timely filed is also a question of law and will be reviewed de novo. *Id.; see also Hyatt v. Adenus Grp., LLC*, 656 S.W.3d 349, 368 (Tenn. Ct. App. 2022).

"Any factual findings a trial court makes shall be reviewed de novo, with a presumption of correctness, unless the evidence preponderates otherwise." *Id.* citing Tenn. R. App. P. 13(d).

## ANALYSIS

### I. SUBSTITUTION OF PARTIES

Mr. Hill contends that the trial court erred in denying his motion to set aside the order granting substitution and renewal of judgment because the Trustee's motion was not timely filed. Specifically, Mr. Hill argues that

> the record demonstrates the Trustee waited over two-and-a-half years after Jernigan's death was suggested to the Trial Court before he filed his motion to substitute—well beyond the 90 days permitted by Tenn. R. Civ. P. 25.01. The Trial Court should not have substituted Trustee as plaintiff and allowed him to extend the judgment.

Respectfully, the facts in this case do not support Mr. Hill's contention. Indeed, Ms. Jernigan's death was suggested upon *the record in the probate proceeding* on May 3, 2019, when the petition to probate her estate was filed. However, the record in this civil action reveals that Trustee timely filed the suggestion of Ms. Jernigan's death simultaneously with his motion for substitution of the party plaintiff on January 27, 2022.

Rule 25.01 of the Tennessee Rules of Civil Procedure states:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of process. Unless the motion for substitution is made **not later than 90 days after the death is suggested upon the record** by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Tenn. R. Civ. P. 25.01 (emphasis added).

- 5 -

The following reveals that Mr. Hill misconstrues the rule's reference to *the record*. The "record" that Mr. Hill references and erroneously relies upon is the record in Ms. Jernigan's probate proceeding. He argues:

> Because Trustee received letters testamentary from the Hamilton County Chancery Court—i.e., the Trial Court—death was "suggested upon the record by service of a statement of the fact of the death" pursuant to Rule 25.01 by the Trustee on May 3, 2019, at the latest. Thus, Trustee had 90 days from May 3, 2019, which was August 1, 2019, to file his motion for substitution with the Trial Court.

*Black's Law Dictionary* defines *record* as "[t]he official report of the proceedings in a case, including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible exhibits." *Record*, *Black's Law Dictionary* (12th ed. 2024). Thus, contrary to Mr. Hill's contention, "the record" contemplated by Rule 25.01 is the record of the underlying civil action in the trial court, meaning this collection action, not a related but separate probate proceeding.

The record in this case, the collection action, reveals that Trustee filed the suggestion of Ms. Jernigan's death simultaneously with his motion for substitution on January 27, 2022. Accordingly, Trustee filed the motion for substitution in accordance with Rule 25.01, "not later than 90 days after the death is suggested upon the record." Tenn. R. Civ. P. 25.01.

Therefore, we affirm the trial court's decision to deny the motion to set aside the order substituting Trustee as judgment creditor and extending the judgment.

## II. THE DEFAULT JUDGMENT

Mr. Hill also challenges the validity of the 2012 default judgment and the trial court's denial of his 2023 motion to set aside that default judgment. Specifically, Mr. Hill argues that "the Trial Court erred in denying [his] Rule 60 Motion after he demonstrated that he did not receive timely notice of the hearing on the Motion for Default Judgment."

### A. Insufficient Notice

We first look to the notice requirements for the 2012 default judgment hearing to determine whether the notice for the default hearing was sufficient.

Rule 55.01 of the Tennessee Rules of Civil Procedure provides the specific requirements for notice in a default judgment: "all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before

the hearing on the application, regardless of whether the party has made an appearance in the action." Tenn. R. Civ. P. 55.01. Additionally, "[w]henever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice . . . and the notice or paper is served upon such party by mail, three days shall be added to the prescribed period." Tenn. R. Civ. P. 6.05. Because the notice was mailed to Mr. Hill, he was entitled to at least eight days' notice before the hearing on the motion for default.

> In computing the days,
>
> the date of the act, event or default after which the designated period of time begins to run is not to be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday as defined in Tenn. Code Ann. § 15-1-101, or, when the act to be done is the filing of a paper in court, a day on which the office of the court clerk is closed or on which weather or other conditions have made the office of the court clerk inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

Tenn. R. Civ. P. 6.01.

> In Mr. Hill's Rule 60.02 motion to set aside, he correctly recounted the following timeline:[2]
>
> 1. Hill was served with process but did not enter an appearance, file an answer, or otherwise respond to the complaint.
>
> 2. A motion for default judgment was filed on April 5, 2012. . . .
>
> 3. The motion for default was served on Hill by mail sent on April 5, 2012. It specifies that the hearing on the motion was scheduled for April 16, 2012.
>
> 4. The default judgment motion was heard on April 16, 2012.
>
> 5. An order of default was entered on April 18, 2012. . . . It recites the April 16th hearing date.

---

[2] The record from the trial court verifies this timeline.

Mr. Hill then demonstrated how this timeline failed to comply with the notice provisions for a default judgment:

| | |
|---|---|
| April 5, 2012 – Thursday | Motion filed and mailed. (not counted) |
| April 6, 2012 – Friday | (not counted – Good Friday)[3] |
| April 7, 2012 – Saturday | (not counted – weekend) |
| April 8, 2012 – Sunday | (not counted – weekend) |
| April 9, 2012 – Monday | Day 1 |
| April 10, 2012 – Tuesday | Day 2 |
| April 11, 2012 – Wednesday | Day 3 |
| April 12, 2012 – Thursday | Day 4 |
| April 13, 2012 – Friday | Day 5 |
| April 14, 2012 – Saturday | (not counted – weekend) |
| April 1[5], 2012 – Sunday | (not counted – weekend) |
| April 16, 2012 – Monday | Motion hearing |
| April 17, 2012 – Tuesday | Day 6 |
| April 18, 2012 – [Wednesday] | Entry of Default Judgment |

In the order denying the Rule 60 motion to set aside default judgment, the trial court agreed with Mr. Hill's computation, stating that "the earliest that Chancellor Brown could have entertained the motion for default in compliance with the rules of civil procedure would have been Tuesday April 17, 2012. He entertained the motion on April 16, 2012, at the regular motion docket." We agree with both the trial court and Mr. Hill that Mr. Hill was not given the appropriate notice before the hearing on the motion for default judgment.

While discussing a strikingly similar computation of time issue, this court in *Cartwright v. Tennessee Farmers Mutual Insurance Company* calculated the allowed period by counting backward from "the event," meaning the date of the hearing on the motion. 453 S.W.3d 910, 914 (Tenn. Ct. App. 2014).[4] Thus, following the methodology prescribed in *Cartwright* and more recently in *Kokko v. Moore*, we count the days backward from the hearing on the motion, April 16, 2012, which date is not included in the calculations. *See id.* at 914; *see also Kokko v. Moore*, No. M2024-00898-COA-R3-CV, 2025 WL 2953694 (Tenn. Ct. App. Oct. 20, 2025); *see also* Tenn. R. Civ. P. 6.01 ("In computing the days, the date of the . . . event . . . is not to be included."). And because the required notice is less than eleven days, intermediate Saturdays, Sundays, and legal holidays are excluded from the computation. *See* Tenn. R. Civ. P. 6.01. Thus, we do not

---

[3] Tennessee Code Annotated § 15-1-101 designates Good Friday as a legal holiday.

[4] The *Cartwright* court noted, however, "that the result is the same if we calculate the time by counting forward beginning the calculation on the date the response was filed and applying the rules of calculation set out in Tenn. R. Civ. P. 6.01." *Id.* at 914–15.

include Saturday, April 14, or Sunday, April 15, in our calculation. Therefore, Friday, April 13, is day one; Thursday, April 12, is day two; Wednesday, April 11, is day three; Tuesday, April 10, is day four; and Monday, April 9, is day five. The weekend of April 7 and 8, as well as April 6, 2012, Good Friday, a legal holiday, are also not included. *See* Tenn. Code Ann. § 15-1-101. And Thursday, April 5, the day the motion was mailed to counsel for Mr. Hill, is included in the count because it is the last day of the relevant period.[5] Thus, it is day six. Because Mr. Hill was served notice six days before the hearing, not the required eight days, Mr. Hill was not provided proper notice of the default judgment hearing.

Accordingly, we agree with the trial court's finding that Mr. Hill was not given the appropriate notice before the hearing on the motion for default judgment.

### B. Validity of the Default Judgment

Because there was insufficient notice for the default judgment hearing, Mr. Hill argues, the 2012 default judgment is void. As such, he contends, the trial court erred in denying his Rule 60.02 motion to set aside the default judgment.

Rule 60.02 of the Tennessee Rules of Civil Procedure provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Tenn. R. Civ. P. 60.02. Then, Rule 55.02 applies Rule 60.02 to default judgments specifically: "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Tenn. R. Civ. P. 55.02. Unless the judgment is void, the Rule 60 motion "shall be made within a reasonable time." Tenn. R. Civ. P. 60.02. However,

---

[5] Counting backwards, Thursday, April 5, 2012, is included in the calculation because it was the "last day" of the relevant period. *See* Rule 6.01 (The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday as defined in Tenn. Code Ann. § 15-1-101, or, when the act to be done is the filing of a paper in court, a day on which the office of the court clerk is closed . . . ."). *See also Cartwright*, 453 S.W.3d at 915.

because void judgments are a nullity from their inception, they may be challenged at any time. *See Turner*, 473 S.W.3d at 278–79.

Our Tennessee Supreme Court has discussed at length the distinction between void and voidable judgments. In *Turner*, the court explained:

> "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, [the] exception to finality would swallow the rule." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, (2010) (internal citation omitted). **A judgment rendered by a court lacking either personal or subject matter jurisdiction is void**. Nevertheless, a judgment of a court of general jurisdiction is presumed to be valid and will be held void only when "its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered." *Giles v. State ex rel. Giles,* 235 S.W.2d 24, 28 (1950).

*Turner*, 473 S.W.3d at 270 (emphasis added) (citation modified).

And as the United States Supreme Court explained in *United Student Aid Funds*, cited in *Turner*:

> Rule 60(b)(4) [the federal equivalent to Tennessee's Rule 60.02(3)] applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard. The error United alleges falls in neither category.

> Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an "arguable basis" for jurisdiction. *Nemaizer v. Baker*, 793 F.2d 58, 65 (C.A.2 1986); see, *e.g.,* [*United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661–62 (1st Cir. 1990)] ("[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and ... only rare instances of a clear usurpation of power will render a judgment void" (brackets and internal quotation marks omitted)).

*United Student Aid Funds, Inc.*, 559 U.S. at 271 (citation modified). After noting that the bankruptcy court had subject matter jurisdiction as well as personal jurisdiction over United, the U.S. Supreme Court determined that because "United received *actual* notice of the filing and contents of Espinosa's [bankruptcy] plan," "[t]his more than satisfied United's due process rights." *Id.* at 272. As such, United was not entitled to relief under

Federal Rule 60(b)(4), a motion to set aside a default judgment for voidness. *Id.* Generally, the U.S. Supreme Court provided, "due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. However, when a "party has been afforded a full and fair opportunity to litigate, . . . the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief." *Id.* at 276.

The Tennessee Supreme Court case of *Gentry v. Gentry* presented the issue of whether a divorce decree was void because it was entered prior to the expiration of the 90-day waiting period. In making its determination, the court thoroughly examined the distinction between a void and voidable judgment as it related to the prescribed timing requirements:

> Resolution of that issue lies in the distinction between a void judgment, which is subject to collateral attack and a voidable judgment, which is not subject to collateral attack. The distinction is stated by that most respected authority on chancery procedure, *Gibson's Suits in Chancery,* as follows:

> > The Chancery Court is a Superior Court of general Equity jurisdiction, and all of its decrees are presumed to be valid, and this presumption is conclusive against collateral attack, unless it affirmatively appears, on the face of the record itself: (1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies.

> > A decree is absolutely void if it appears on the face of the record itself either that the Court had no general jurisdiction of the subject matter, or that the decree is wholly outside of the pleadings, and no consent thereto appears. A decree is void as to any person shown by the record itself not to have been before the Court in person, or by representation. A decree not *prima facie* void is valid and binding, until it is either (1) reversed by the Supreme Court, or by the Court of Appeals; or (2) is set aside on a complaint filed to impeach it.

> > All decrees not thus appearing on their face to be void are absolutely proof against collateral attack, and no parol

proof is admissible on such an attack to show any defect in the proceedings, or in the decree.

William H. Inman, *Gibson's Suits in Chancery* § 228 at 219–20 (7th ed. 1988).

Tested by the standard for a void judgment, the divorce decree in this case is not subject to collateral attack. The court obviously had general jurisdiction of the subject matter, a suit for divorce; the decree awarding the divorce was not outside the pleadings, it was the specific relief sought; and, the court had jurisdiction of the parties, both of whom appeared in person and by pleadings. The conclusion that Section 36-4-103(c) mandates that a complaint for divorce be on file 90 days before being heard, does not mean necessarily that a decree entered upon a hearing held less than 90 days subsequent to the filing is void. Failure to comply with the 90 day requirement does not render the decree "wholly outside of the pleadings." *Gibson's Suits in Chancery*, § 228 at 219. Since the decree is not void, it is either voidable or valid, *Gibson's Suits in Chancery* § 193 at 194, and, in either event, cannot be reversed through a collateral attack by the children of the parties to the divorce suit.

*Gentry*, 924 S.W.2d 678, 679–80 (Tenn. 1996) (footnote omitted).

Because a motion to set aside a final judgment must be made within a reasonable time unless the judgment is void, *see* Tenn. R. Civ. P. 60.02, and more than a decade passed before Mr. Hill filed his motion to set aside the default judgment, only a void judgment would provide Mr. Hill with his requested relief. Here, there is no dispute that the trial court had subject matter jurisdiction of the litigation, that the default judgment decree itself is not outside of the pleadings, and the court had jurisdiction of the party complaining, Mr. Hill. Thus, the three principal grounds for declaring a judgment void are unavailable to Mr. Hill. *See id*. Moreover, there is no dispute that Mr. Hill had notice of the hearing on the motion for default, albeit insufficient notice due to the date of service of the notice and the date of the hearing occurred. And as the trial court explained in denying Mr. Hill's motion to set aside:

In this case, the record demonstrates that this Court had subject matter jurisdiction over an alleged breach of contract that occurred in Hamilton County. Further this Court had personal jurisdiction over Defendant Hill, as the record reflects he was a resident of Tennessee and was personally served in Knoxville, TN. No defect rendering the judgment void is apparent on the face of the judgment or the record of the proceedings. Since the judgment is not prima facie void, it is valid and binding. *Turner*. Thus this Court

- 12 -

concludes the default judgment obtained against Defendant Hill is not, as he argues, void, but rather is a valid and binding judgment.

We agree. As noted by the trial court, it had subject matter jurisdiction over the litigation. And it is undisputed that Mr. Hill was personally served on March 2, 2012, at which time the trial court obtained personal jurisdiction over Mr. Hill. *See Turner*, 473 S.W.3d at 271 ("A court obtains personal jurisdiction over a party defendant by service of process."). This satisfies the requirements of due process, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds*, 559 U.S. at 272. Finally, as in *Gentry*, the judgment rendered "was not outside the pleadings[;] it was the specific relief sought." 924 S.W.2d at 680.

The trial court also noted that while Mr. Hill's notice for the default hearing was insufficient, Mr. Hill had proper notice of the subsequent hearing on damages, and he was served with the final judgment that followed. In its order granting the default judgment, the trial court explained "[t]hat the Complaint is taken as confessed and a default judgment entered in favor of Plaintiff Jo Ann Jernigan against Defendant Trevor D. Hill." *See Patterson v. Rockwell Int'l,* 665 S.W.2d 96, 101 (Tenn. 1984) ("The rule is that the defendant, by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in his complaint, except the amount of the plaintiff's unliquidated damages.") The trial court set the matter for a final hearing for damages. After Mr. Hill had received the appropriate notice for the final hearing and returned the card confirming service by certified mail, the trial court held the hearing for damages and then entered the final order, a judgment in the amount of $144,072.00.

As the foregoing facts reveal, Mr. Hill was "afforded a full and fair opportunity to litigate," and as such, "[his] failure to avail [himself] of that opportunity will not justify . . . relief." *United Student Aid Funds*, 559 U.S. at 276. Accordingly, we affirm the trial court's denial of Mr. Hill's motion to set aside default judgment.

### C. Exceptional Circumstances

We also agree with the trial court's assessment that even if the judgment is void, exceptional circumstances exist to deny relief from the judgment. *See Turner*, 473 S.W.3d at 279; Restatement (Second) of Judgments § 66 (1982).

Even where a judgment is found to be void, "relief from a void judgment may be denied if certain exceptional circumstances exist." *Turner*, 473 S.W.3d at 279. The *Turner* court adopted the definition of *exceptional circumstances* as provided by the Restatement:

> Relief from a default judgment on the ground that the judgment is invalid will be denied if:

- 13 -

(1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and

(2) Granting the relief would impair another person's substantial interest of reliance on the judgment.

Restatement (Second) of Judgments § 66 (1982).

Although the trial court found that the default judgment was valid and binding, "[i]n the interests of judicial economy and efficiency," it "assumed arguendo that the default judgment taken against Hill is void" and found that, even if so, exceptional circumstances justify denying relief.

As for the first factor to be considered, the trial court found:

On July 15, 2022 Defendant filed a motion to set aside — not the default judgment — but the charging orders. He asserted that his delay in responding was due to inadvertence and/or excusable neglect. Defendant did not allege the judgment was void. After this Court denied Defendant's motion to set aside the charging orders, the Defendant appealed the Order denying the motion to set aside the charging orders, and paid a $300,000 cash bond to stay the collection of the judgment. Thus Defendant appealed the collection efforts, but still did not move to set aside the judgment.

The record also reflects that previously on December 9, 2022, Defendant filed a motion to join in his mother's motion to stay and quash garnishment. However, he did not move to set aside the default judgment.

On December 12, 2022 Defendant filed a motion to set aside the order substituting the Trustee as plaintiff and extending the judgment. In that motion Defendant argued that the judgment had expired, not that the judgment was void.

On December 30, 2022 Defendant filed two declarations that his businesses have no assets that belong to him personally. This again only contests the collection efforts.

On January 3, 2023 Defendant filed a reply to Plaintiff's response to Defendant's motion to set aside and again asserted the judgment expired on May 5, 20[2]2. However he did not assert the default judgment was void.

- 14 -

On January 17, 2023 Defendant entered into an "Agreed Order" to respond to certain discovery by February 16, 2023 propounded pursuant to Rule 69, in aid of execution of the judgment. Thus here again Defendant acknowledged a valid judgment but was defending against the collection thereof.

Moreover this Court's Order entered January 17, 2023 denying the Defendant's motion to set aside the charging orders noted that as to the May 1, 2012 Judgment, "there is no dispute as to the validity of that judgment." This Court further noted "here a valid action was commenced and a valid judgment was entered in this action." This Court further found that "it has subject matter jurisdiction and personal jurisdiction over the matter and the parties and the Order Renewing Judgment is valid." Defendant did not file a Rule 59 motion to alter or amend the finding that "there is no dispute as to the validity of the judgment."

It was not until August of 2023 that Defendant first raised the default was void when Defendant moved the appellate court to remand his appeal so that he could file this Rule 60.02 motion. However, this was after Defendant had already appealed this Court's denial of his motion to set aside the Rule 69.04 extension of the judgment.

**Thus the record reflects Defendant filed nine pleadings in this case defending against the judgment prior to his filing a motion to set aside the default judgment.**

(Emphasis added).

We agree with the trial court's determination that Mr. Hill's actions satisfy the first factor of extraordinary circumstances in that he "manifested an intention to treat the judgment as valid." Restatement (Second) of Judgments § 66 (1982). More specifically, Mr. Hill's first nine filings all treated the default judgment as valid, which evidenced "an affirmation of the judgment because the circumstances invited an expression of a contrary position." Restatement (Second) of Judgments § 66 cmt. b (1982). Mr. Hill, "the party against whom the judgment was rendered," was "placed in a position where he would be expected to deny the effect of the judgment but [did] not do so." *Id.*

As for the second factor, whether granting a motion to set aside the default judgment "would impair another person's substantial interest of reliance on the judgment," the trial court found, in pertinent part:

Here Mrs. Jernigan altered her estate planning documents specifically due to this action, and further instructed her Trustee to collect this debt. She

incurred attorney's fees in attempting to collect the judgment. After her passing, the Plaintiff, following Mrs. Jernigan's instruction, has incurred attorneys fees and his time in seeking to collect this debt. All the while, Defendant has had the benefit of the funds. . . .

.    .    .

Further Mrs. Jernigan amended her trust to state, "Trevor Hill shall not be considered a descendant of Grantor for purposes of this instrument, it being Grantor's intent to exclude Trevor Hill as a beneficiary." Thus this Court concludes that setting aside the default judgment would impair substantial interests of reliance of Jo Ann Jernigan as well as her heirs and beneficiaries and the Plaintiff.

Additionally, the trial court reasoned:

Mr. Jernigan is dead. Mrs. Jernigan is dead. Thus there are no witnesses alive now to refute Defendant's allegations. Defendant could have come into court in 2012 and told his story and asserted his claim that the funds were a gift, but he chose instead to lay low. Jo Ann Jernigan's passing is "insurmountable prejudice" to the Plaintiff's case, and weighs heavily against setting aside the judgment. *John Jahen v. AER Express*, E2022-00344-COA-R3-CV, 2023 WL 3828496 (June 6, 2023).

(Citation modified).

We agree that the reliance of Ms. Jernigan, her heirs, and Trustee on the default judgment would be greatly impaired if relief from the judgment were granted to Mr. Hill. As a result, even if the default judgment were found to be void, exceptional circumstances exist to deny relief from that judgment. *See Turner*, 473 S.W.3d at 279; Restatement (Second) of Judgments § 66 (1982).

### III. TRUSTEE'S REQUEST FOR ATTORNEY'S FEES

Trustee's only additional issue addressed attorney's fees, requesting that "if the Court reverses the trial court and sets aside either the underlying judgment or the renewal order as void, it should award [Trustee] fees."

Because we have found the judgment against Mr. Hill to be binding, this issue is pretermitted.

## IN CONCLUSION

We affirm the trial court in all respects, and this matter is remanded with costs of appeal assessed against appellants, Trevor Hill, The Hill, LLC, Forrest Hill, Knoxville, LLC, and Gale Hill.

_____
FRANK G. CLEMENT JR., P.J., M.S.